UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | |
|---|---|
| In re: | |
| | Chapter 13 |
| DAVID EDDISON LEWIS, JR. and ERICA NICOLE LEWIS, | Case No.: 26-10641 |
| Debtors. | |

**OBJECTION TO CONFIRMATION OF DEBTORS' CHAPTER 13 PLAN**

Santander Consumer USA Inc. dba Chrysler Capital ("Movant"), a secured creditor herein, by and through its undersigned attorneys, files this Objection to Confirmation of Debtors' Chapter 13 Plan and states as follows:

1. This matter is a core proceeding pursuant to 28 U.S.C. § 157, and the Court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157, and 1334. This matter has been referred to this Court pursuant to the General Order of Reference entered by the United States District Court for the Middle District of North Carolina.

2. On August 24, 2026 (the "Petition Date"), the Debtors filed a joint voluntary petition for relief under Chapter 13 to commence the above-referenced case (the "Chapter 13 Case").

3. Movant is a secured creditor of the Debtors as evidenced by that certain Retail Installment Sale Contract—Simple Finance Charge dated March 19, 2024 (the "Contract"), executed by David Eddison Lewis, Jr. as the sole buyer in connection with the purchase and financing of a used 2022 Jeep Grand Cherokee from CGR GB CDJR, LLC, 3710 W. Wendover Avenue, Greensboro, NC 27407, bearing Vehicle Identification Number 1C4RJGBG8N8589122

(the "Vehicle"). The Contract was assigned to Chrysler Capital. A true and correct copy of the Contract is attached hereto as **Exhibit "A."**

4. Movant has a valid, perfected security interest in the Vehicle, as evidenced by the lien noted on the North Carolina Certificate of Title for the Vehicle (the "Certificate of Title"). The Certificate of Title identifies Chrysler Capital as lienholder and reflects a lien date of April 23, 2024. A true and correct copy of the Certificate of Title is attached hereto as **Exhibit "B."**

5. The Contract was entered into 888 days before the Petition Date. Because the debt is secured by a purchase-money security interest in a motor vehicle acquired for the personal use of a Debtor within the 910-day period preceding the Petition Date, 11 U.S.C. § 506 does not apply to Movant's claim under the unnumbered paragraph following 11 U.S.C. § 1325(a)(9). Accordingly, the claim may not be bifurcated based on the value of the Vehicle.

6. Movant filed Proof of Claim No. 5-1 on September 25, 2026, asserting a claim of $27,628.91 and identifying the entire claim as secured. The Proof of Claim lists the Vehicle's value as $23,825.00, consistent with the NADA Official Used Car Guide retail value reflected in the valuation attached hereto as **Exhibit "C."** Because 11 U.S.C. § 506 does not apply to Movant's claim under the unnumbered paragraph following 11 U.S.C. § 1325(a)(9), the Vehicle's stated value does not permit bifurcation of the claim. On information and belief, the Vehicle is not insured.

7. The Debtors' Chapter 13 Plan (the "Plan") has not been confirmed. The Plan, filed on August 24, 2026 as Doc. 3, requests in Section 4.3(d) that Chrysler Capital's claim, estimated at $28,333.52, be valued and treated as secured in the amount of only $21,465.00, paid at $442.98 per month at 8.75% interest, with $214.65 in adequate protection, and that the remainder be treated as unsecured under Section 6.

8. The Plan improperly values and bifurcates Movant's 910-day claim. Because the Contract created a purchase-money security interest in a motor vehicle acquired for personal use within 910 days before the Petition Date, Movant must be treated as fully secured for its allowed claim of $27,628.91 under 11 U.S.C. § 1325(a)(5)(B)(ii) and the hanging paragraph following 11 U.S.C. § 1325(a)(9).

9. Under 11 U.S.C. § 1325(a)(5)(B)(i), the Plan must provide that Movant retain its lien on the Vehicle until the earlier of payment of the underlying debt determined under nonbankruptcy law or discharge of the underlying debt under 11 U.S.C. § 1328.

10. The Plan's proposed treatment does not provide for payment of Movant's full allowed secured claim of $27,628.91 with interest and therefore does not provide Movant with property having a value, as of the effective date of the Plan, of not less than the allowed amount of its secured claim. The Plan consequently fails to satisfy 11 U.S.C. § 1325(a)(5)(B)(ii).

11. Movant has not accepted the Plan pursuant to 11 U.S.C. § 1325(a)(5)(A). In addition, on information and belief, the Vehicle is not insured, and Movant demands proof of insurance identifying Movant as loss payee.

12. Movant demands that the Debtors amend the Plan to treat Movant's allowed claim of $27,628.91 as fully secured, to provide deferred payments with interest at an appropriate rate sufficient to pay the full secured claim, to retain Movant's lien as required by 11 U.S.C. § 1325(a)(5)(B)(i), and to remove the proposed unsecured treatment of any portion of Movant's claim.

13. The Plan cannot be confirmed unless it is amended to provide for payment of Movant's allowed secured claim in full with interest and for retention of Movant's lien as required

by 11 U.S.C. § 1325(a)(5)(B). Movant further requests proof of insurance identifying Movant as loss payee.

WHEREFORE, Santander Consumer USA Inc. dba Chrysler Capital requests that this Court deny confirmation of the Plan unless the Plan is modified to treat Movant's allowed claim of $27,628.91 as fully secured, provide interest at an appropriate rate, and provide for retention of Movant's lien as required by 11 U.S.C. § 1325(a)(5)(B), and grant such further relief as this Court deems appropriate.

Dated: October 14, 2026

WOMBLE BOND DICKINSON (US) LLP

By: /s/ Eudora F. S. Arthur
EUDORA F. S. ARTHUR
N.C. State Bar. No. 59854
555 Fayetteville Street, Suite 1100
Raleigh, NC 27601
Telephone: (919) 755-2178
dorie.arthur@wbd-us.com
*Attorneys for Santander Consumer USA Inc. dba Chrysler Capital.*

**CERTIFICATE OF SERVICE**

I, the undersigned, of Womble Bond Dickinson (US) LLP, hereby certify:

That I am, and at all times hereinafter mentioned was, more than eighteen (18) years of age;

That on this day, I served a copy of the foregoing Objection to Confirmation on:

David Eddison Lewis, Jr. and Erica Nicole Lewis
2825 Wild Poplar Way
Greensboro, NC 27405
*Debtors*

by depositing the same in the United States mail, first class, postage prepaid.

That on this day, the foregoing Objection to Confirmation was served by electronic means through the Court's CM/ECF service on:

Damon Terry Duncan
*Attorney for Debtors*

Anita Jo Kinlaw Troxler
*Chapter 13 Trustee*

John Paul Hughes Cournoyer
*Bankruptcy Administrator*

I certify under penalty of perjury that the foregoing is true and correct.

Dated: October 14, 2026

WOMBLE BOND DICKINSON (US) LLP

By: /s/ Eudora F. S. Arthur
EUDORA F. S. ARTHUR
N.C. State Bar No. 59854
555 Fayetteville St., Suite 1100
Raleigh, NC 27601
Telephone: (919) 755-2178
dorie.arthur@wbd-us.com

*Attorneys for Santander Consumer USA Inc. dba Chrysler Capital.*

# EXHIBIT "A"

# RETAIL INSTALLMENT SALE CONTRACT
## SIMPLE FINANCE CHARGE
## THIS IS A CONSUMER CREDIT DOCUMENT

| Buyer Name and Address (Including County and Zip Code) | Co-Buyer Name and Address (Including County and Zip Code) | Seller-Creditor (Name and Address) |
|---|---|---|
| DAVID EDDISON LEWIS JR<br>2825 WILD POPLAR WAY<br>Greensboro, NC 27405 GUILFORD<br>Cell:<br>Emai | N/A<br>Cell: N/A<br>Email: N/A | CGR GB CDJR, LLC<br>3710 W. WENDOVER AVENUE<br>GREENSBORO, NC 27407 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements in this contract. You agree to pay the Seller - Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used | Year | Make and Model | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|
| Used | 2022 | Jeep Grand Cherokee | 1C4RJGBG8N8589122 | Personal, family, or household unless otherwise indicated below<br>☐ business<br>☐ agricultural ☐ N/A |

TRUE AND ACCURATE COMPLETED COPY - UCC NON-AUTHORITATIVE COPY

## FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. | Total Sale Price<br>The total cost of your purchase on credit, including your down payment of $ 5,000.00 is |
|---|---|---|---|---|
| 12.93 % | $ 15,386.69 | $ 34,166.59 | $ 49,553.28 | $ 54,553.28 |

**Your Payment Schedule Will Be:** (e) means an estimate

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 72 | $ 688.24 | Monthly beginning 05/03/2024 |
| N/A | $ N/A | N/A |
| N/A | | |

**Late Charge.** If payment is not received in full within 10 days after it is due, you will pay a late charge of $ 18.00 .

**Prepayment.** If you pay early, you will not have to pay a penalty.

**Security Interest.** You are giving a security interest in the vehicle being purchased.

**Additional Information:** See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date and security interest.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

The preceding NOTICE applies only to goods or services obtained primarily for personal, family, or household use. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

TRUE AND ACCURATE COMPLETED COPY - UCC NON-AUTHORITATIVE COPY

**Returned Check Charge:** You agree to pay a charge of $ 35.00 if any check you give us is dishonored.

☐ VENDOR'S SINGLE INTEREST INSURANCE (VSI insurance): If the preceding box is checked, the Creditor requires VSI insurance for the initial term of the contract to protect the Creditor for loss or damage to the vehicle (collision, fire, theft, concealment, skip). VSI insurance is for the Creditor's sole protection. This insurance does not protect your interest in the vehicle. **You may choose the insurance company through which the VSI insurance is obtained.** If you elect to purchase VSI insurance through the Creditor, **the cost of this insurance is $** N/A and is also shown in item 4B of the Itemization of Amount Financed. The coverage is for the initial term of the contract.

**OPTIONAL GAP CONTRACT.** A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in Item 4D of the Itemization of Amount Financed. See your gap contract for details on the terms and conditions it provides. It is a part of this contract.

Term N/A Mos. N/A
Name of Gap Contract

I want to buy a gap contract.

Buyer Signs X A N/A

**ITEMIZATION OF AMOUNT FINANCED**

1 Cash Price (including $ 861.32 sales tax) $ 33,672.84 (1)

2 Total Downpayment =

Trade-in 2012 (Year) Lincoln (Make) MKX (Model)

| | | |
|---|---|---|
| Gross Trade-In Allowance | $ 5,000.00 | |
| Less Pay Off Made By Seller to N/A | $ 0.00 | |
| Equals Net Trade In | $ 5,000.00 | |
| + Cash | $ N/A | |
| + Other N/A | $ N/A | |
| + Other Rebates | $ N/A | |
| + Other N/A | $ N/A | |
| (If total downpayment is negative, enter "0" and see 4I below) | | $ 5,000.00 (2) |

3 Unpaid Balance of Cash Price (1 minus 2) $ 28,672.84 (3)

4 Other Charges Including Amounts Paid to Others on Your Behalf (Seller may keep part of these amounts):

| | | |
|---|---|---|
| A Cost of Optional Credit Insurance Paid to Insurance Company or Companies. Life $ N/A; Disability $ N/A | $ N/A | |
| B Vendor's Single Interest Insurance Paid to Insurance Company | $ N/A | |
| C Other Optional Insurance Paid to Insurance Company or Companies | $ N/A | |
| D Optional Gap Contract | $ N/A | |
| E Official Fees Paid to Government Agencies N/A | $ N/A | |
| F Government Taxes Not Included in Cash Price N/A | $ N/A | |
| G Government License and/or Registration Fees License Fee : $ 38.75 N/A | $ 38.75 | |
| H Government Certificate of Title Fees | $ 56.00 | |
| I Other Charges (Seller must identify who is paid and describe purpose) | | |
| to N/A for Prior Credit or Lease Balance | $ N/A | |
| to RELIANCE for Service Contract | $ 4,500.00 | |
| to DEALER for Documentation Fee | $ 899.00 | |
| to N/A for N/A | $ N/A | |
| to N/A for N/A | $ N/A | |
| to N/A for N/A | $ N/A | |
| to N/A for N/A | $ N/A | |
| to N/A for N/A | $ N/A | |
| to N/A for N/A | $ N/A | |
| to N/A for N/A | $ N/A | |
| to N/A for N/A | $ N/A | |
| to N/A for N/A | $ N/A | |
| to N/A for N/A | $ N/A | |
| Total Other Charges and Amounts Paid to Others on Your Behalf | | $ 5,493.75 (4) |

5 Amount Financed (3 + 4) $ 34,166.59 (5)

**OPTION:** ☐ You pay no finance charge if the Amount Financed, item 5, is paid in full on or before N/A, Year N/A. SELLER'S INITIALS N/A

TRUE AND ACCURATE COMPLETED COPY - UCC NON-AUTHORITATIVE COPY

**Insurance. You may buy the physical damage insurance this contract requires from anyone you choose or you may provide the required insurance through an existing policy owned or controlled by you. Insurance you provide must be acceptable to us.** You are not required to buy any other insurance to obtain credit unless the box indicating Vendor's Single Interest Insurance is required is checked on page 1 of this contract.

If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

**Check the insurance you want and sign below:**

## Optional Credit Insurance

☐ Credit Life: ☐ Buyer ☐ Co-Buyer ☐ Both

☐ Credit Disability: ☐ Buyer ☐ Co-Buyer ☐ Both

Premium:

Credit Life $ N/A

Credit Disability $ N/A

Insurance Company Name N/A

Home Office Address N/A

**Credit life insurance and credit disability insurance are not required to obtain credit.** Your decision to buy or not to buy credit life insurance and credit disabilty insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. If you choose this insurance, the cost is shown in Item 4A of the Itemzation of Amount Financed. Credit life insurance pays the unpaid part of the Amount Financed if you die. Credit life insurance is based on your original payment schedule. This insurance may not pay all you owe on this contract if you make late payments. Credit disability insurance pays the scheduled payments due under this contract while you are disabled. Credit disability insurance does not cover any increase in your payment or in the number of payments. Coverage for credit life insurance and credit disability insurance ends on the original due date for the last payment unless a different term for the insurance is shown below.

## Other Optional Insurance

☐ N/A (Type of Insurance) N/A (Term)

Premium $ N/A

Description of Coverage N/A

Insurance Company Name N/A

Home Office Address N/A

☐ N/A (Type of Insurance) N/A (Term)

Premium $ N/A

Description of Coverage N/A

Insurance Company Name N/A

Home Office Address N/A

Other optional insurance is not required to obtain credit. Your decision to buy or not buy other optional insurance will not be a factor in the credit approval process. It will not be provided unless you sign and agree to pay the extra cost.

I want the insurance checked above.

x B N/A — Buyer Signature; N/A — Date

x B N/A — Co-Buyer Signature; N/A — Date

**THIS INSURANCE DOES NOT INCLUDE INSURANCE ON YOUR LIABILITY FOR BODILY INJURY OR PROPERTY DAMAGE CAUSED TO OTHERS. WITHOUT SUCH INSURANCE YOU MAY NOT OPERATE THIS VEHICLE ON PUBLIC HIGHWAYS.**

TRUE AND ACCURATE COMPLETED COPY - UCC NON-AUTHORITATIVE COPY

TRUE AND ACCURATE COMPLETED COPY - UCC NON-AUTHORITATIVE COPY

1. **FINANCE CHARGE AND PAYMENTS**

   a. **How we will figure Finance Charge.** We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed.

   b. **How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose as the law allows.

   c. **How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on page 1 of this contract on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.

   d. **You may prepay.** You may prepay all or part of the unpaid part of the Amount Financed at any time without penalty. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.

2. **YOUR OTHER PROMISES TO US**

   a. **If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.

   b. **Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.

   c. **Security Interest.**
   You give us a security interest in:
   - The vehicle and all parts or goods installed in it;
   - All money or goods received (proceeds) for the vehicle;
   - All insurance, maintenance, service or other contracts we finance for you; and
   - All proceeds from insurance, maintenance, service or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.

   This secures payment of all you owe on this contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle. You will not allow any other security interest to be placed on the title without our written permission.

   d. **Insurance you must have on the vehicle.**
   You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. You agree to name us on your insurance policy as loss payee. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest. If we buy either type of insurance, we will tell you which type and charge you must pay. The charge will be the premium for the insurance and a finance charge computed at the Annual Percentage Rate shown on page 1 of this contract.
   If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.

   e. **What happens to returned insurance, maintenance, service, or other contract charges.** If we obtain a refund of insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe.

3. **IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES**

   a. **You may owe late charges.** You will pay a late charge on each late payment as shown on page 1 of this contract. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments. If you pay late, we may also take the steps described below.

   b. **You may have to pay all you owe at once.** If you break your promises (default), we may demand that you pay all you owe on this contract at once. Default means:
   - You do not pay any payment on time;
   - You give false, incomplete, or misleading information during credit application;
   - You start a proceeding in bankruptcy or one is started against you or your property; or
   - You break any agreements in this contract.

   The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.

   c. **You may have to pay collection costs.** If we hire an attorney to collect what you owe, you will pay attorney's fees and court costs, as the law allows. The maximum attorney's fee you will pay will be 15% of the amount you owe.

   d. **We may take the vehicle from you.** If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device (such as GPS), you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you. If you do not ask for these items back, we may dispose of them as the law allows.

   e. **How you can get the vehicle back if we take it.** If we repossess the vehicle, you may pay to get it back (redeem). We will tell you how much to pay to redeem. Your right to redeem ends when we sell the vehicle.

   f. **We will sell the vehicle if you do not get it back.** If you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.
   We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us. If you do not pay this amount when we ask, we may charge you interest at the Annual Percentage Rate, before and after judgment, unless a lower rate is required by law.

   g. **What we may do about optional insurance, maintenance, service, or other contracts.** This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

TRUE AND ACCURATE COMPLETED COPY - UCC NON-AUTHORITATIVE COPY

**4. WARRANTIES SELLER DISCLAIMS**
**Unless the Seller makes an express warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.**
This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide.

**5. Used Car Buyers Guide. The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.**
**Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.**

**6. SERVICING AND COLLECTION CONTACTS**
In consideration of our extension of credit to you, you agree to provide us your contact information for our servicing and collection purposes. You agree that we may use this information to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you. You agree to allow our agents and service providers to contact you as agreed above.
You agree that you will, within a reasonable time, notify us of any change in your contact information.

**7. APPLICABLE LAW**
Federal law and the law of the state of North Carolina apply to this contract.

**8. NEGATIVE CREDIT REPORT NOTICE**
**We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.**

**Electronic Contracting and Signature Acknowledgment.** You agree that (i) this contract is an electronic contract executed by you using your electronic signature, (ii) your electronic signature signifies your intent to enter into this contract and that this contract be legally valid and enforceable in accordance with its terms to the same extent as if you had executed this contract using your written signature and (iii) the authoritative copy of this contract ("Authoritative Copy") shall be that electronic copy that resides in a document management system designated by us for the storage of authoritative copies of electronic records, which shall be deemed held by us in the ordinary course of business. Notwithstanding the foregoing, if the Authoritative Copy is converted by printing a paper copy which is marked by us as the original (the "Paper Contract"), then you acknowledge and agree that (1) your signing of this contract with your electronic signature also constitutes issuance and delivery of such Paper Contract, (2) your electronic signature associated with this contract, when affixed to the Paper Contract, constitutes your legally valid and binding signature on the Paper Contract and (3) subsequent to such conversion, your obligations will be evidenced by the Paper Contract alone.

***The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.***

**HOW THIS CONTRACT CAN BE CHANGED.** This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding. Buyer Signs **XC** DAVID LEWIS Co-Buyer Signs **XC** N/A
If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.
**See the rest of this contract for other important agreements.**

**NOTICE TO RETAIL BUYER: Do not sign this contract in blank. You are entitled to a copy of the contract at the time you sign. Keep it to protect your legal rights.**

**You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You confirm that you received a completely filled-in copy when you signed it.**

Buyer Signs **XD** DAVID LEWIS Date 03/19/2024 Co-Buyer Signs **XD** N/A Date N/A
Buyer Printed Name DAVID EDDISON LEWIS JR Co-Buyer Printed Name N/A
If the "business" use box is checked in "Primary Use for Which Purchased": Print Name N/A Title N/A
Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.
Other owner signs here **X** N/A Address N/A
Seller signs CGR GB CDJR, LLC Date 03/19/2024 By **XD** WILLIAM COOPER Title FINANCE MANAGER

TRUE AND ACCURATE COMPLETED COPY - UCC NON-AUTHORITATIVE COPY
TRUE AND ACCURATE COMPLETED COPY - UCC NON-AUTHORITATIVE COPY

# EXHIBIT “B”

# STATE OF NORTH CAROLINA

06/2022)

## CERTIFICATE OF TITLE

| VEHICLE IDENTIFICATION NUMBER | YEAR MODEL | MAKE | BODY STYLE |
|---|---|---|---|
| 1C4RJGBG8N8589122 | 2022 | JEEP | MP |

| TITLE NUMBER | TITLE ISSUE DATE | PREVIOUS TITLE NUMBER |
|---|---|---|
| | 08/29/2026 | |

MAIL TO

CHRYSLER CAPITAL
PO BOX 961272
FORT WORTH TX 76161-

| ODOMETER READING |
|---|
| 053991 |
| ODOMETER STATUS |
| |
| TITLE BRANDS |
| |

OWNER(S) NAME AND ADDRESS

DAVID EDDISON LEWIS JR
2825 WILD POPLAR WAY
GREENSBORO NC 27405-2952

The Commissioner of Motor Vehicles of the State of North Carolina hereby certifies that an application for a certificate of title for the herein described vehicle has been filed pursuant to the General Statutes of North Carolina and based on that application, the Division of Motor Vehicles is satisfied that the applicant is the lawful owner. Official records of the Division of Motor Vehicles reflect vehicle is subject to the liens, if any, herein enumerated at the date of issuance of this certificate.

As WITNESS, his hand and seal of this Division of the day and year appearing in this certificate as the title issue date.

Paul Tine

COMMISSIONER OF MOTOR VEHICLES

FIRST LIENHOLDER: DATE OF LIEN 04/23/2024
CHRYSLER CAPITAL
PO BOX 961272
FORT WORTH TX 76161-0272

LIEN RELEASED BY:
SIGNATURE__________
TITLE__________ DATE__________

SECOND LIENHOLDER: DATE OF LIEN

LIEN RELEASED BY:
SIGNATURE__________
TITLE__________ DATE__________

THIRD LIENHOLDER: DATE OF LIEN

LIEN RELEASED BY:
SIGNATURE__________
TITLE__________ DATE__________

FOURTH LIENHOLDER: DATE OF LIEN

LIEN RELEASED BY:
SIGNATURE__________
TITLE__________ DATE__________

ADDITIONAL LIENS:

ANY ALTERATIONS OR ERASURES VOID TITLE

MVR - 191 (Reverse)

**Federal and State law** requires that you state the mileage in connection with the transfer of ownership. Providing a false statement or failing to properly complete this form may result in fines and/or imprisonment.

**A**

## FIRST RE-ASSIGNMENT OF TITLE BY REGISTERED OWNER

The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address:

**Name of Buyer:** ____________________

**Address of Buyer:** ____________________

"I, seller(s) certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked."

[ ] ODOMETER READING (NO TENTHS)

❑ 1. The mileage stated is in excess of its mechanical limits.

❑ 2. The odometer reading is not the actual mileage.

**WARNING - ODOMETER DISCREPANCY**

To my knowledge the vehicle described herein:

Yes ❑ No ❑ Has been involved in a collision or other occurrence to the extent that the cost to repair exceeds 25% of fair market value.

Yes ❑ No ❑ Has been a flood vehicle.

Yes ❑ No ❑ Has been a reconstructed or a salvage vehicle.

**Date vehicle delivered to purchaser** ____________________

Seller(s) Signature ____________________

Seller(s) Hand Printed Name ____________________

Date __________ County __________ State __________

I certify that the following person(s) personally appeared before me this day, each acknowledging to me that he or she voluntarily signed the foregoing document for the purpose stated therein and in the capacity indicated:

____________________ seller(s)/name(s) of principal(s).

Notary Public Signature ____________________

Notary's Printed or Typed Name ____________________

My Commission expires ____________________ (SEAL)

Buyer(s) Signature ____________________

Buyer(s) Hand Printed Name ____________________

**B**

## PURCHASER'S APPLICATION FOR NEW CERTIFICATE OF TITLE

The undersigned purchaser of the vehicle described on the face of this certificate, hereby makes application for a new certificate of title and certifies that said vehicle is subject to the following named liens and none other and that the information contained herein is true and accurate to my best knowledge and belief.

**CHECK Appropriate Block/s** (Application cannot be processed without certification of services)

❑ Title Only - Vehicle Not in Operation

❑ Title and License Plate
Class of License ____________________

❑ Inoperable Vehicle - Vehicle substantially disassembled and unfit or unsafe to be operated on the highway

❑ Truck Weight Desired ____________________

❑ Plate No. Transferred ____________________ (List Plate Number and Expiration)

❑ Limited Registration Plate (When property taxes are deferred)

For Hire Vehicle ❑ Yes or ❑ No

**I certify that all the above information is correct.** ____________________ (customer's initials)

**OWNER(S)**

**Owner 1 DL#** __________ ____________________
**Full Legal Name of Owner (First, Middle, Last, Suffix) or Company**

**Owner 2 DL#** __________ ____________________
**Full Legal Name of Owner (First, Middle, Last, Suffix) or Company**

**Joint applicants request this title to be issued with Joint Tenants with Rights of Survivorship? Check appropriate block: ❑ Yes ❑ No**

Residence Address ____________________
City State Zip Code County

Mailing Address
(If Different From Above) ____________________

Vehicle Location Address
(If Different from Residence Address Above) ____________________

### FIRST LIEN

Date of Lien __________ Acct # __________ Lien holder ID __________

Lien holder Name ____________________

Address ____________________

City __________ State __________ Zip Code __________

### SECOND LIEN

Date of Lien __________ Acct # __________ Lien holder ID __________

Lien holder Name ____________________

Address ____________________

City __________ State __________ Zip Code __________

I certify for the motor vehicle described herein that I have financial responsibility as required by law.

Insurance Company Authorized in NC ____________________ Policy Number ____________________

**Odometer Reading** [ ]

Signature of Owner(s) ____________________

Date __________ County __________ State __________

I certify that the following person(s) personally appeared before me this day, each acknowledging to me that he or she voluntarily signed the foregoing document for the purpose stated therein and in the capacity indicated: ____________________ owner(s)/name(s) of principal(s).

Notary Public Signature ____________________

Notary's Printed or Typed Name ____________________

My Commission expires ____________________ (SEAL)

NOTE: RETAIL PURCHASER MUST APPLY FOR NEW TITLE WITHIN 28 DAYS AFTER PURCHASE OR PAY STATUTORY PENALTY. ALTERATIONS OR ERASURES WILL VOID THIS TITLE.

# EXHIBIT "C"

**N.A.D.A. Official Used Car Guide**
**Automated Vehicle Valuation**
Friday, October 9, 2026

| | | | |
|---|---|---|---|
| **Guide Edition:** | August 2026 | **Region:** | Southeastern |
| **Vehicle:** | 2022 Jeep | | |
| | Grand Cherokee | **VIN:** | 1C4RJGBG8N8589122 |
| | Utility 4D Limited 3.6L V6 | **Weight:** | 4,266 |
| **Mileage:** | 83,591 | **MSRP:** | $44,645.00 |

**Base Retail:** $25,200.00 **Base Trade:** $21,425.00 **Base Loan:** $19,300.00

**Accessory Adjustments:**

(Retail) (Trade) (Loan)

**Mileage Adj.:** ($1,375.00) **(Trade) Accessory Adj.:** $0.00

**Total N.A.D.A. Official Used Car Values**

**Retail:** $23,825.00 **Trade:** $20,050.00 **Loan:** $17,925.00

All NADA Values Reprinted With Permission Of
N.A.D.A. Official Used Car Guide Company Copyright NADASC 1996